IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SUSAN T.,[1]

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

Civ. No. 3:22-cv-00209-AA

**OPINION & ORDER**

AIKEN, District Judge:

Plaintiff Susan T. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying benefits. The decision of the Commissioner is REVERSED and REMANDED for further proceedings.

## BACKGROUND

On July 12, 2018, plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning on April 6, 2018. Tr. 13. The application was denied on May 22, 2019, and then again upon reconsideration on January 31, 2020. *Id.* At the plaintiff's request, a telephone hearing was held before an Administrative Law Judge ("ALJ") on December 21, 2020.

---

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

*Id.* On February 10, 2021, the ALJ issued a decision finding plaintiff not disabled. Tr. 10-24. On April 27, 2021, plaintiff requested that the Appeals Council review the ALJ's decision. Tr. 164. On December 10, 2021, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 1-6. This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25; *see also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work

experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date, April 6, 2018. Tr. 15.

At step two, the ALJ found that plaintiff had the following severe impairments through her date last insured: abdominal-pelvic adhesive disease and rupture of right peroneal tendon status post-surgical repair. Tr. 15.

At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 16.

Before moving to step four, the ALJ determined plaintiff's residual functional capacity. The ALJ found plaintiff could perform light work with the following additional limitations: she can occasionally climb ramps and stairs, but never ropes, ladders or scaffolds; she can frequently stoop and kneel; she can occasionally crouch and crawl. *Id.*

At step four, the ALJ found plaintiff was capable of performing her past relevant work as generally performed in the national economy. Tr. 19.

Accordingly, at step four, the ALJ found that plaintiff was not disabled as defined by the Social Securities Act since April 6, 2018. Tr. 19. The ALJ did not proceed to step five. Tr. 13-19.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful

normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff alleges the ALJ erred by (1) improperly dismissing plaintiffs testimony without providing clear and convincing reasons; (2) failing to address statements from lay witnesses; and (3) failing to resolve an apparent conflict between the vocational expert's testimony and the Dictionary of Occupational Titles at step four.

### I. Subjective Symptom Testimony

Plaintiff asserts that the ALJ erred by discounting her subjective symptom testimony. An ALJ must perform a two-stage analysis to determine whether a claimant's testimony is credible. 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). At the second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of symptoms. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and

what evidence undermines the claimant's complaints." *Id.* (internal quotation marks and citation omitted). An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's credibility, such as prior inconsistent statements concerning the symptoms, testimony that appears less than candid, unexplained failure to seek treatment or follow a prescribed course of treatment, or a claimant's daily activities. *Id.*

"ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). Additionally, the ALJ must consider plaintiff's statements about time off from work resulting from a disability. *See* Ellen O. v. Comm'r SSA, No. 1:21-cv-01577, 2023 U.S. Dist. LEXIS 131896, 2023 WL 4864439 at *31 (D. Or. Jul. 31, 2023).

Plaintiff has abdominal adhesion disease. Tr. 15. Plaintiff testified that abdominal adhesions made any movement in her abdominal area painful. Tr. 189. During her life, plaintiff had approximately 20 adhesion surgeries. *E.g.*, Tr. 437, 460, 764. During the relevant period, plaintiff underwent one abdominal surgery each year. Tr. 437, 460, 764. Plaintiff testified that after surgery, she was essentially bedridden. Tr. 17.

Plaintiff testified that she stopped working as a teacher and a daycare center director because of her health. Tr. 181. Plaintiff testified that her past work required

her to "be on her knees, it require[d] [her] to bend and lift and carry." Tr. 39. Plaintiff testified that she was "becoming more ill . . . [and] the recovery time was taking a lot longer. Tr. 33-34. The recovery time from adhesion removal is approximately four weeks, during which doctors advised her to continue pelvic rest and avoid lifting heavy things. *E.g.*, Tr. 405-06. As discussed below, the VE testified that if an individual missed two or more days of work per month on an unpredictable basis in the long-term, that would "preclude their ability to maintain competitive employment" from plaintiff's former jobs. Tr. 43-44.

Plaintiff had a tendon tear in her ankle. Tr. 294. In July 2018, she had surgery to repair her tendon. Tr. 327. In April 2018, plaintiff's right ankle pain improved "at least 50%" in preoperative pain. Tr. 310. After surgery, she exhibited normal gate and station, and was ambulating full weight in normal shoes. Tr. 18, 643. Plaintiff started to have an increased tingling sensation and numbness. Tr. 18, 661. To alleviate pain, plaintiff received injections, which provided "very temporary" relief. Tr. 18, 654-56. Plaintiff had a second surgery on her right ankle to reimplant her right sural nerve to muscle tissue. Tr. 649. After surgery, plaintiff felt improvement but still had difficulty with climbing stairs and pressing the brake pedal when driving. Tr. 643. Plaintiff used a cane off and on throughout the relevant period. *E.g.*, 309, 656.

Plaintiff testified that she had a migraine at least once a month and rated the pain as a 10 on a scale of zero to ten. Tr. 612. Dr. Kaur believed plaintiff likely had a rare headache condition and prescribed her medication. Tr. 614. Plaintiff tried

Page 7 – OPINION & ORDER

multiple medications to reduce pain, but the medicines either provided no relief or only temporary relief. Tr. 632, 635, 667.

Plaintiff testified she could be on her feet for 20 minutes before needing to lie down to relieve her pain. Tr. 39. She could perform light household tasks with assistance from her husband. Tr. 36. She planted vegetables in raised beds but does not mow or weed. Tr. 37. Plaintiff testified that she needed to take breaks when doing chores. Tr. 215. She could go to the grocery store and to the post office. Tr. 32. She went on trips every several months to Montana to visit family. Tr. 35-36. Her husband would drive on the trips. Tr. 36.

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. Tr. 16. However, the ALJ found that plaintiff's testimony concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record for several reasons. *Id.* First, the ALJ noted that plaintiff "experienced abdominal-pelvic adhesions for many years, requiring laparoscopic surgery periodically but she was able to work in the past despite her condition and there is no clear evidence of worsening at the alleged onset date." Tr. 17. The ALJ determined plaintiff's post-surgical instructions "to continue pelvic rest and avoid heavy lifting" . . . were "somewhat persuasive" opinions that were supported by plaintiff's "surgical history and consistent with the surgical treatment records." Tr. 18. The ALJ concluded that light exertion residual functional capacity

finding was consistent with these opinions and was also consistent with the claimant's ankle surgeries. Tr. 18.

The ALJ also determined that plaintiff was "able to engage in a variety of activities." Tr. 18. The ALJ noted that she was able to sit in a car while driving to Montana, run errands, garden, and cook. *Id.* Additionally, the ALJ found that plaintiff responded well to treatment. Tr. 18. For example, the ALJ pointed to plaintiff's ankle improvement of topical cream and injections. Tr. 18. The ALJ noted that plaintiff was ambulating with full weight in normal shoes, and that in January 2020, plaintiff had a normal gait and station. Tr. 18. Lastly, the ALJ noted that the plaintiff did not testify to plaintiff's right foot or ankle pain or headaches. Tr. 16, 18.

The Court finds the ALJ errored in discounting plaintiff's subjective symptoms. First, the ALJ erred by discounting plaintiff's testimony that she requires significant recovery time, approximately four weeks, from her surgeries, and the error was harmful because the VE testified that missing that much work would prevent gainful work. Although the recovery time is not the disability, the disability necessitates the reoccurring surgeries accompanied by an approximately four-week recovery time. The ALJ recognized that the medical record supported plaintiffs recovery time claims, but the ALJ failed to incorporate the recovery time in the analysis. In addition, plaintiff's minimal functional ability and her necessity for breaks and help from her husband were not inconsistent with how plaintiff described her pain. Last, the ALJ's finding that plaintiff responded well to treatment was not reasonable because medications to help alleviate ankle pain only provided temporary relief.

The Court concludes that the ALJ failed to provide sufficiently clear and convincing reasons for discounting plaintiff's testimony and further concludes that the error was harmful.

## II. Lay Witness Testimony

Plaintiff contends that the ALJ erred by failing to address statements from lay witnesses. An ALJ is required to take into account lay witness testimony as to the severity of a plaintiff's symptoms. Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). ). "The ALJ may discount lay witness testimony by providing "reasons that are germane to each witness."' Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993). An ALJ may reject law witness statements for the same reason the ALJ rejects plaintiffs subjective complaints if the lay witness statements are similar to those complaints. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009).

"The requirement that an ALJ consider lay witness testimony comes from regulations that remain intact after the 2017 amendment." Joseph L. S. v. Kijakazi, No. 5:23-cv-00060-BFM, 2023 WL 5611408 (C. Ca. Aug. 30, 2023); 20 C.F.R. §416.913(a)(1)-(5) (listing evidence that the Commissioner will "consider," including evidence from nonmedical sources); 20 C.F.R. § 416.929(a) (the Commissioner "will consider all of your statements about your symptoms, such as pain, and any description your medical sources or nonmedical sources may provide about how the symptoms affect your activities of daily living and your work ability"). Nothing in the 2017 amendment eliminates the longstanding requirement that the ALJ provide reasons for discounting lay witness testimony. Kimberly T. v. Kijakazi, No. 3:20-CV-

1543-SI, 2022 WL 910083, at *7 (D. Or. Mar. 29, 2022); *Joseph L. S. v. Kijakazi*, No. 5:23-cv-00060-BFM, 2023 WL 5611408 (C. Ca. Aug. 30, 2023). Thus, the ALJ's obligation to provide germane reasons for rejecting lay witness testimony remains intact even after the 2017 amendments. *Joseph L. S. v. Kijakazi*, No. 5:23-cv-00060-BFM, 2023 WL 5611408 (C. Ca. Aug. 30, 2023).

Here, plaintiff's husband and daughter provided testimony about plaintiff's symptoms. Both the husband and daughter testified that plaintiff had serious pain and difficulty with daily activities. *E.g.*, Tr. 215, 271. Both noted that plaintiff needed to take breaks and rests during household chores. Tr. 215, 271. The husband stated that after surgery, husband had to nurse plaintiff back to health. Tr. 272. The husband also mentioned that after surgeries plaintiff needed help bathing and with personal care. Tr. 215. The daughter noted that when she returned home in 2019, the daughter could "really see a difference in [plaintiff]," and that plaintiff got tired very easily. Tr. 271.

The ALJ did not mention either of the lay witness testimonies. Tr. 13-19. The ALJ found that plaintiff "was able to work in the past despite her condition and there was no clear evidence of worsening at the alleged onset date." Tr. 17.

The Court concludes that the ALJ errored by failing to provide a germane reason for discounting the lay witness' testimony. The Court further concludes that because the ALJ improperly dismissed plaintiff's testimony, the error was harmful.

### III.  DOT and Vocational Expert testimony

Plaintiff argues that the ALJ erred by failing to fully account for the Vocational Expert's (VE) testimony at step four. Social Security Ruling (SSR) 00-4p recognizes that VE testimony may conflict with the Dictionary of Occupational Titles (DOT). The ALJ is required to reconcile an apparent conflict between the VE's testimony and the DOT. *Massachi v. Astrue*, 486 F.3d 1149, 1153-54 (9th Cir. 2007). The ALJ must ask the VE to explain the conflict. *Id* The ALJ must "then determine whether the VE's explanation for the conflict is reasonable." *Id.* "The ALJ's failure to resolve an apparent inconsistency may leave us with a gap in the record that precludes us from determining whether the ALJ's decision is supported by substantial evidence." *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015).

Here, the VE categorized all three of plaintiff's past relevant work through three of her jobs. Tr. 40-44. The VE categorized plaintiffs first job as a daycare teacher, which is light work and skilled, at SVP 7, DOT code 092.227-018. Tr. 41. The VE noted plaintiff would be limited to medium work as performed. The VE categorized plaintiff's second job as director of a daycare center, DOT code 092.167-101, which is sedentary work and skilled, at SVP: 7. Tr. 41. The VE categorized plaintiff's third job as an elementary school teacher, which is classified as light work and skilled, at SVP: 7, DOT code 092.227.101. Tr. 41.

When the ALJ asked whether a person who was able to perform light work; use occasional ramps and stairs; use no ropes, ladders or scaffolds; engage in frequent stooping and kneeling; and occasionally crouch and crawl could perform any of the occupations, the VE responded that a person could perform the teacher, daycare

teacher, and daycare director jobs, as classified by DOT. Tr. 42. The VE further explained that if a person needed to sit up to six hours a day, the person would not be able to perform the teaching occupations but could perform the daycare director position. Tr. 42. When asked whether these occupations have transferable skills, the VE answered that the skills of these occupations are specific. Tr. 43.

Plaintiff's counsel asked whether it is reasonable for the teacher positions to be performed above light in terms of working with younger children. Tr. 43. The VE answered, "when you're talking about kindergarten kids and, and first and second graders, I think it's typical that there would have to be times when . . . the teacher would have to lift the kids or . . . pick them up, oh, off the ground and that kind of stuff. So I think it's reasonable to expect they would have to lift over 20 pounds with young children like that." Tr. 43.

The VE testified that if an individual missed two or more days of work per month on an unpredictable basis in the long-term, that would "preclude their ability to maintain competitive employment" from plaintiff's former jobs because of a "loss of productivity and the inconsistency of performance." Tr. 43-44.

The VE stated that their testimony was not consistent with the DOT. Tr. 44. The VE explained elements of their testimony that was not addressed by DOT, such as the "response to questions about productivity and absenteeism, and the complexity of the jobs." Tr. 44.

The ALJ found that plaintiff was able to return to her past relevant work as a daycare center teacher, DOT code 092.227-018, as the occupation was generally

performed in the national economy. Tr. 19. The ALJ did not mention any conflict between the VE's testimony and the DOT. Tr. 13-19. Additionally, the ALJ did not determine whether the VE's explanation for the conflict was reasonable.[2]

The ALJ's failure to resolve an inconsistency apparent in the record leave us "precludes us from determining" that the ALJ's decision is supported by substantial evidence." *Zavalin,* 778 F.3d 846. On this record, the VE's testimony was inconsistent, where the VE testified on one hand that the teacher jobs involved light work, but that when teaching younger grades, they would involve lifing an amount of weight not considered to be light work. Thus, a gap in the record precludes us from determining whether the ALJ's decision is supported by substantial evidence.

Moreover, as discussed above, the VE testified that missing two or more days of work per month in the long-term would preclude plaintiff from maintaining competitive employment in all her former jobs. Accordingly, plaintiff would not be able to perform either teaching position.

## IV. Remedy

For the reasons set forth above, the Court concludes that the ALJ's decision contains harmful errors and must be reversed and remanded. The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Triechler v. Comm'r*, 775 F.3d 1090, 1101-02 (9th Cir. 2014). A remand for award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has

---

[2] The ALJ also did not mention how the ALJ reconciled the VE's testimony regarding absenteeism and plaintiff's required time off for surgery.

been fully developed, there are no outstanding issues that must be resolved, and further administrative proceedings would not be useful; and (3) after crediting the relevant evidence, "the record, taken as a whole, leaves not the slightest uncertainty" concerning disability. *Id.* at 1100-01 (internal quotation marks and citations omitted).

Here, it would serve no useful purpose to remand this case for the ALJ to further consider a step five finding, because the ALJ would be required to establish that plaintiff had skills that would readily transfer to at least three occupations. When an individual reaches 55 years of age, they fall into the "advanced age" category. 20 C.F.R. § 404.1563(e). At this point, age significantly limits the claimant's ability to adjust to other work. *Id.* When the claimant of advanced age is limited to light work and has skills "that are not readily transferable to a significant range of semi-skilled or skilled work," the claimant must be found disabled. 20 C.F.R. pt. 404, subpt. P, app. 2 Rule 202.00(c).

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is REVERSED and REMANDED for benefits.

It is so ORDERED and DATED this ___29th___ day of September 2023.


                                            /s/Ann Aiken
                                            ANN AIKEN
                                            United States District Judge